WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Daniel Saul Coven, | ) | |
| | ) | |
| Plaintiff, | ) | No. CIV-07-1831-PHX-RCB |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| United States Office of | ) | |
| Personnel Management, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### *__Introduction__*

Plaintiff *pro se*, Daniel Saul Coven, "is sole proprietor of federalgovernmentjobs.us[,] a website that provides job search and notification services to job seekers." Co. (doc. 1) at 2. From roughly July 2005 through June 2007, plaintiff was among those who requested and received data feed via defendant United States Office of Personnel Management ("OPM") regarding all federal job vacancy announcements. Harrison Decl'n (doc. 39-3) at 5; see also Co. (doc. 1) at 2. Effective June 30, 2007, however, "OPM directed its contractor, MGS [Monster Government Solutions] to cease the compilation of th[at] [job vacancy]

data[.]" Harrison Decl'n (doc. 39-3) at 5.

Shortly thereafter, on July 13, 2007, pursuant to the Freedom of Information Act, 5. U.S.C. § 552, *et seq*. ("FOIA"), plaintiff requested "daily . . . electronic copies of the data contained in the USAJOBS.gov job vacancy database[,] . . . on an ongoing basis." Doc. 27 at 4. Plaintiff further requested that information on an expedited basis, with the fee waived, or at least reduced. Ultimately, on appeal OPM did grant plaintiff's request for the job vacancy records, but it denied his appeal in all other respects.

In the meantime, plaintiff commenced the present FOIA action in which three motions are currently pending: (1) OPM's motion for summary judgment pursuant to Fed. R. Civ. P. 56 (doc. 38); (2) plaintiff's cross-motion for summary judgment (doc. 44); and (3) plaintiff's motion to strike (doc. 56).

### *Background*

To place plaintiff's July 13th request and OPM's appeal decision in context, a brief history of the USAJOBS® web site is necessary. The declaration of Willie A. Harrison, OPM's Deputy Director of the USAJOBS® program, is instructive in that regard. OPM "is responsible for maintaining" USAJOBS®, which is "the Federal government's official web site for Federal jobs and employment information." Harrison Decl'n (doc. 39-3) at 3, ¶ (13). The USAJOBS® web site had its genesis in 2001 as part of an effort to "simplif[y] the process of locating and applying for Federal jobs." Id. at 4, ¶ (13). OPM contracts with MGS "for the day-to-day operations and maintenance" of that site. Id. at 3, ¶ (13).

Prior to the existence of the USAJOBS® website, from about

July 2004 to June 30, 2007, MGS was directed to compile a data feed
which included all vacancy announcement information submitted by
Federal agencies for the purpose of providing this data feed to the
U.S. Department of Labor (DOL) for the America's Jobs Bank
[("AJB")] program." Id. at 4, ¶ (14). DOL instituted that program
and web site, among other things, "to distribute federal job
vacancies to State and local unemployment agencies[.]" Id. at 5, ¶
(14). OPM's contractor, MGS, maintained and updated vacancy
announcement information in an active database for OPM, but "OPM
neither received nor regularly accesse[d] the content of the . . .
database." Id. "The data feed was primarily established for the
convenience of the [DOL] and other Federal agencies and to provide
an archive of vacancy announcements as required for compliance with
regulatory guidance." Id. The USAJOBS® web site was the vehicle
for fulfilling OPM's statutory mandate which, in essence, is to
disseminate information regarding competitive service job
announcements for federal agencies. See 5 U.S.C. §§ 3327 and 3330.
OPM "made th[at] data feed publicly available to anyone who
requested it when it was being produced." Harrison Decl'n (doc.
39-3) at 5, ¶ (14). Plaintiff was among the beneficiaries of that
data feed from some time in 2005 until July 2007. Co. (doc. 1) at
2; see also Harrison Decl'n (doc. 39-3) at 5,
¶ (14).

    In January 2007, DOL informed OPM of its intent to shut down
its AJB program. Harrison Decl'n (doc. 39-3) at 5, ¶ (14). DOL
made that decision partially due to the "success and availability
of . . . the USAJOBS® site," and the resultant savings from
eliminating the duplication of effort through the AJB site. Id.

The following month, February 2007, OPM notified "all known
recipients/users of the [AJB] data feed of the pending
termination[,]" effective June 30, 2007.  Id.  OPM also "directed
its contractor, MGS, to cease the compilation of th[at] data on a
daily basis . . . [e]ffective 30 June 2007."  Id.  MGS complied and
"[t]he feed was terminated and is no longer available."  Id.
"[A]ll relevant vacancy announcement information continues to be
available . . . on the USAJOBS® web site."  Id.

       After the decision to terminate the daily data feed through
AJB, on July 13, 2007, plaintiff made a FOIA request of OPM
enumerating 29 separate categories of information which he wanted
from the "electronic copies of the data contained in the
USAJOBS.gov job vacancy database."  Doc. 27 at 4; see also Harrison
Decl'n (doc. 39-3) at 2, ¶ (4).  Plaintiff emphasized that he was
"request[ing] daily copies of these files on an ongoing basis."
Id.  Plaintiff based his request for "expedited service" on the
theory that "these records are time sensitive as most vacancies
hav[e] only a two week application period and because these files
will be used to disseminate the information to the public."  Id.
(emphasis in original).

       In his request, plaintiff opined that "there should be no fees
for providing copies of reasonably sized electronic records," but
he sought to be advised if "the cost would exceed $1 per day."  Id.
Plaintiff concluded by notifying OPM that he could "receive the
files as is or compressed (.zip or .gz) by electronic mail, web or
through FTP[.]"  Id.  Likewise, plaintiff advised, "We can provide
an upload server, or can download from a [MGS] or OPM provided
server[.]"  Id.

On September 10, 2007, OPM responded to that July 13th FOIA request advising plaintiff, as it had previously, that "due to security risk issues that could potentially affect the integrity of the data, OPM shut down data feeds to all requestors [sic], . . . on June 30, 2007." Id. at 5. OPM added that "termination" of that "data-feed . . . coincided with the permanent closure of" DOL's AJB program. Id. OPM further explained that given that termination, the requested data "is now available only on the USAJOBS® and StudentJobs® web sites." Id.[1] Because the requested data "is not offered in any other format; or, from any other source[,]" OPM informed plaintiff that it had "no records responsive to [his] request." Id. OPM concluded its response by further informing plaintiff of his appeal rights. Id.

Plaintiff immediately responded that same day via e-mail, indicating that "'[t]he appeal process was initiated on 8/23/97.'" Harrison Decl'n (doc. 39-3) at 2, ¶ (6). Although plaintiff "acknowledged that 'much of the requested information is contained in the USAJOBS® website,'" some of it, such as the "'location codes . . . and date of last modification'" were not displayed on that website." Id. That e-mail was incorrectly addressed. Id. Therefore, OPM had no record of any aspect of an August 23, 2007, appeal from plaintiff. Id.

Prior to exhausting his administrative remedies, on September 25, 2007, plaintiff commenced the present FOIA action. Eventually, the court stayed this action pending notification as to "whether or not plaintiff ha[d] exhausted his administrative

---

[1] This emphasis appears to be in the original document, although the court cannot be certain given the poor quality of this copy.

remedies." Doc. 24 at 1:22-23. During the administrative appeal process, due to a "change in [its] policy[,]" Harrison Decl'n (doc. 39-3) at 3, ¶ (10), OPM "decided to provide all available records requested by Plaintiff." DSOF (doc. 39) at 2, ¶ 4:4-6. In particular, "[a]fter reviewing the issues surrounding the provisions of USAJOBS® data, around October 2007, OPM decided to revive the availability of a modified version of the previous data feed." Id. at 5, ¶ (14). OPM made that decision primarily to facilitate widespread dissemination of the availability of federal jobs.

Due to ongoing concerns as to the "integrity of the information" though, OPM decided that recipients of the data feed would be required to "sign a 'term of use agreement' limiting their use and manipulation of the data." Id. at 6, ¶ (14). Organizations such as Google, Inc., Microsoft Network and Yahoo "currently receiv[e] a data feed of USAJOBS® data which MGS has been compiling since about December 2007." Id. at 6, ¶ (15). Those entities have entered into term of use agreements with OPM. Id.

During the pendency of this action, "plaintiff was made aware of the availability of the data feed and sent a copy of the terms of use agreement[.]" Id. Nonetheless, plaintiff has refused to sign that agreement believing that "it unduly limit[s] his use of the data." Id. Despite OPM's express "willingness to modify the terms of use agreement in an effort to accommodate plaintiff's concerns[,]" he "has not contacted the USAJOBS® office to discuss [such] modifications[.]" Id.

Eventually OPM granted plaintiff's appeal to the extent it

agreed to provide him with the requested job vacancy records, but it denied his appeal for a fee waiver or reduction, expedited processing and daily, ongoing copies of those records. <u>See</u> Doc. 39-2 at 1-2. OPM's rationale for each of these determinations will be fully discussed herein. Suffice it to say for now that plaintiff is challenging each of those three adverse determinations. He is also seeking attorney's fees and costs.

Before determining whether either party is entitled to summary judgment in whole or in part, the court must address plaintiff's motion to strike.

***Discussion***

## *I. Motion to Strike*

Pursuant to Fed. R. Civ. P. 12(f), plaintiff is seeking to strike almost all of OPM's response as it relates to attorney's fees and costs. Plaintiff asserts that the court should strike that portion of OPM's response (doc. 52, § VI, p. 7:26-9:4) because it is immaterial and contradicts arguments in OPM's pending summary judgment motion.

OPM counters that even if it is not material to OPM's own motion, that particular response argument is material to "Plaintiff's own request for attorneys[,] fees and costs." Resp. (doc. 61) at 1. Additionally, OPM argues, as explained below, that plaintiff is improperly relying upon Rule 12(f) as the basis for his motion to strike. The court agrees that there are both procedural and substantive reasons for denying this motion to strike.

Rule 12(f), which is the sole basis for this motion, provides in relevant part that "[u]pon motion made by a party

. . . , the court may order stricken from any *pleading* any . . .
immaterial, . . . matter." Fed. R. Civ. P. 12(f) (emphasis added).
Rule 7, in turn, essentially defines pleadings as complaints and
answers. <u>See</u> Fed. R. Civ. P. 7(a). Therefore, "Rule 12(f) cannot
serve as a procedural vehicle for striking language contained in
motion papers." <u>Holyoak v. United States</u>, 2009 WL 1456472, at *1
(D.Ariz. May 21, 2009) (internal quotation marks and citation
omitted). Indeed, the Ninth Circuit has plainly held that "[u]nder
the express language of the rule, *only* pleadings are subject to
motions to strike." <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d
880, 885 (9th Cir. 1983) (emphasis added). Likewise, LRCiv
7.2(m)(1) prohibits this motion because it does not fall into the
narrow category of motions to strike which that Rule allows.

The court also denies Plaintiff's motion to strike on the
merits. In his complaint, one form of relief which plaintiff is
seeking is an award of costs. Co. (doc. 1) at 5, ¶ 2). In his
cross-motion for summary judgment, plaintiff explicitly expands
that request to include attorney's fees. <u>See</u> Cross-Mot. (doc. 46)
at 10, § VI. Based upon the foregoing, undoubtedly OPM's response
addressing the issues of attorney's fees and costs is material.
Hence, there is no basis for striking that aspect of OPM's
response. Accordingly, the court denies plaintiff's motion to
strike. Denial of this motion is in keeping with the general view
that "such motions are disfavored and infrequently granted." <u>See</u>
<u>Garcia-Barajas v. Nestle Purina Petcare Co.</u>, 2009 WL 2151850, at *2
(E.D.Cal. July 16, 2009) (citation omitted); <u>see</u> <u>also</u> 5C Wright &
A. Miller, Federal Practice and Procedure
§ 1380 (3d ed. 2004) (same) (citing cases).

## II.  Summary Judgment Motions

### A.  Governing Legal Standards

Pursuant to Fed.R.Civ.P. 56©, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  It is beyond dispute that "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir.2007) (citation omitted).  "Once the moving party meets its initial burden, . . . , the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotation marks and citations omitted).  When assessing the record to determine whether there is a "genuine issue for trial the court must "view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in his favor." Horphag, 475 F.3d at 1035 (citation omitted).  "This is true even though[,]" as here, "the court is presented with cross-motions for summary judgment[.]"  High Tech Gays v. Defense Ind. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990) (citation omitted).

"Although the mandate of FOIA calls for broad disclosure of Government records, the Act represents a careful balance between 'public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment.'"

Laughlin v. C.I.R., 103 F.Supp.2d 1219, 1222 (S.D.Cal. 1999)

(quoting Kissinger, 445 U.S. at 150, 100 S.Ct. 960).  Thus,

"[s]ummary judgment for the defendant is appropriate in a FOIA case

'when the agency proves that it has fully discharged its

obligations under FOIA, after the underlying facts and the

inferences to be drawn from them are construed in the light most

favorable to the FOIA requester.'" Id. (quoting Miller v. U.S.

Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985) (other citation

omitted).  In determining whether an agency has improperly withheld

records from a complainant, the court must conduct a *de novo*

review.  See 5 U.S.C. § 552(a)(4)(B) (West 2007).  "[T]he burden is

on the agency [OPM] to sustain its action." Id.  These principles

guide the court's consideration of the parties' respective summary

judgment arguments.

### B.  *"Ongoing, Daily Disclosure"*

The sole jurisdictional basis in plaintiff's complaint is

5 U.S.C. § 552(a)(4)(B).  That provision of the FOIA "vests

jurisdiction in federal district courts to enjoin an 'agency from

withholding agency records and to order the production of agency

records improperly withheld from the complainant.'" Kissinger v.

Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139, 100

S.Ct. 960, 963 (1980) (quoting 5 U.S.C.

§ 552(a)(4)(B)).  "Federal jurisdiction" under section 552(a)(4)(B)

"is dependent upon a showing that an agency has (1) 'improperly';

(2) 'withheld'" (3) 'agency records.'" Kissinger, 445 U.S. at 150,

100 S.Ct. 960.  A district court's "authority to devise remedies

and enjoin agencies can *only* be invoked, under the jurisdictional

grant conferred by § 552, if the agency has contravened *all* three

components of this obligation." Id. (emphasis added); see also U.S. Department of Justice v. Tax Analysts, 492 U.S. 136, 142, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) ("Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements.") As can be seen, the issue of FOIA jurisdiction is inextricably linked with whether an agency has improperly withheld its records – a fact the parties herein did not consider.

Focusing strictly upon the temporal aspect of plaintiff's request, OPM contends that he is not entitled "a 'daily feed' of future records pursuant to the FOIA." Mot. (doc. 40) at 3:21–22 (citations omitted) (emphasis added). Put differently, OPM asserts that the FOIA does not entitle plaintiff "to obtain records created after the agency responds to his request." Id. at 3:20-21 (emphasis added). In light of the foregoing, and the fact that "during the administrative appeal[,]" OPM "decided . . . to provide all available records Plaintiff requested in this matter[,]" OPM argues that summary judgment in its favor is mandated because it has not improperly withheld any agency record. Id. at 4:5-8.

OPM does not frame its argument in jurisdictional terms. Indeed, at the outset OPM expressly states that it is "not contest[ing] jurisdiction[.]" Id. at 1 (emphasis added). At the same time, however, OPM accurately notes that unless it has improperly withheld an agency record, this court lacks jurisdiction. See id. Therefore, the court finds that OPM's argument that it is entitled to summary judgment because plaintiff is not entitled to "ongoing, daily copies" is more properly analyzed in jurisdictional terms.

- 11 -

Plaintiff concedes that OPM has "partially granted" his request by providing "those records current at the time of processing[.]" Pl. Opp'n (doc. 44) at 1; and Reply (doc. 59) at 2:3-4 (emphasis added). Undoubtedly, OPM's voluntary provision of those records deprives this court of jurisdiction over this aspect of plaintiff's action. See Beech v. C.I.R., 190 F.Supp.2d 1183, 1187 (D.Ariz. 2001) (citing, *inter alia*, Carter v. Veterans Admin., 780 F.2d 1479, 1481 (9th Cir. 1986)) (plaintiff's FOIA claim mooted where defendant provided requested records, so court dismissed for lack of jurisdiction), aff'd, 37 Fed. Appx. 324 (9th Cir. 2002). Plaintiff adheres to the view, however, that OPM "has not complied with FOIA" because it will not provide him with "*future* records[]" based upon his initial request. Pl. Opp'n (doc. 44) at 1; and Reply (doc. 59) at 2:4. Plaintiff posits that by not being provided with "daily, *ongoing* copies of [OPM's] job vacancy records," he will "effectively [be] deni[ed] access to job vacancies that would close before subsequent FOIA request[s] could be processed." PSOF (doc. 49) at 3 (emphasis added). Thus, "in order to eliminate future disagreement[,]" plaintiff seeks "to have this court find that . . . ongoing, daily disclosure is not a matter of agency discretion, but a matter of law[.]" Cross-Mot. (doc. 46) at 7:17-19. Hence, plaintiff argues, he is entitled to summary judgment on the issue of ongoing, daily disclosure.

Given the parties' divergent views as to OPM's obligation to provide future records, the issue, as OPM accurately frames it, is whether the FOIA requires OPM "to provide daily[,] ongoing copies of the job vacancy announcements." Resp. (doc. 52) at 1. If OPM has such an obligation, then admittedly it has not met that

obligation.  Thus, OPM would be deemed to have improperly withheld
agency records, and the court would have jurisdiction to grant
summary judgment in plaintiff's favor on this issue.   Conversely,
if OPM does not have any obligation under FOIA to provide ongoing,
daily copies, then its failure to do so does not amount to improper
withholding of agency records.  The court, therefore, would lack
jurisdiction over this aspect of plaintiff's action.

As OPM points out, agencies are not under an obligation to
continuously update responses to a FOIA request.  In Lybarger v.
Cardwell, 577 F.2d 764 (1st Cir. 1978) ("Lybarger II")[2], for
example, the plaintiff nonprofit advocacy organization requested a
variety of government materials and handbooks from the Social
Security Regional Commissioner's Office.  That organization also
requested that it "be placed on a mailing list to receive as a
matter of routine any updated materials."  Id. at 765.  The
organization challenged, among other things, the Commissioner's
"refus[al] to provide [it] with updated materials automatically."
Id. at 766.  The district court held that the Commissioner did not
violate FOIA by declining "to provide periodic updates and
revisions of th[o]se materials automatically as they [we]re
issued."  Lybarger I, 438 F.Supp. at 1077.

The First Circuit affirmed because it could not "find any
language in the [FOIA] which imposes such an explicit obligation on
agencies."  Lybarger II, 577 F.2d at 767.  Moreover, the
Commissioner "agreed to make updated materials available in

---

[2]     Evidently failing to recognize that Lybarger had been affirmed, OPM
relies only upon the district court's decision, Lybarger v. Cardwell, 438 F.Supp.
1075 (D.Mass. 1977) ("Lybarger I"), as, in turn, does plaintiff Coven.

response to individual [subsequent] requests[;]" and plaintiffs gave the Court no "basis for believing that the commission w[ould] not comply with the statutory mandate of the [FOIA] and reply promptly to such requests." <u>Id.</u> Thus, because "[t]he Commissioner is required by law to meet only that specific responsibility[,]" the First Circuit found that it could not "hold that he [wa]s required to do more, no matter how efficient or beneficial other forms of disclosure may be." <u>Id.</u>; <u>see also</u> <u>Mandel Grunfeld and Herrick v. United States Customs Service</u>, 709 F.2d 41, 43 (11th Cir. 1983) ("Nothing in the FOIA can be construed as requiring an agency to set up a mailing list to automatically disseminate agency records or information.") As one court has so succinctly put it, "'FOIA creates a right of access to records, not a right to personal services.'" <u>Smith v. F.B.I.</u>, 2008 WL 115350, at *4 (E.D.Cal. 2008) (quoting <u>Sands v. U.S.</u>, 1995 WL 552308, at *5 (S.D.Fla. 1995) (other citation omitted)). Indeed, in a different context, the Supreme Court has recognized "that agencies generally are not obligated to provide extensive service in fulfilling FOIA requests." <u>Kissinger</u>, 445 U.S. at 154, 100 S.Ct. at 970.

Consistent with the foregoing, in <u>Church of Scientology of Texas v. I.R.S.</u>, 816 F.Supp. 1138 (W.D.Tex. 1993), the court held that "[d]ocuments generated subsequent to the date specified in the request are outside the scope of the request and need not be disclosed." <u>Id.</u> at 1148. The court soundly reasoned that "[t]he FOIA does not expressly or implicitly require an agency to locate documents outside the dates specified in the request." <u>Id.</u> "Furthermore, it is unreasonable to expect an agency to locate and determine the disclosability of documents generated subsequent to

- 14 -

the date specified in a request." <u>Id.</u>  Finding that "[t]he agency

should only be required to make one thorough search per request[,]"

the court held that "[t]he most logical deadlines [for documents to

satisfy a given request] is the  date specified in that request."

<u>Id.</u>

Administratively, that deadline "makes the most sense[,]" the

court found, because "a search would be a never ending process if

the cut-off date for records responsive to the request is a date

other than the date specified in the request." <u>Id.</u>  Furthermore,

requiring the agency to conduct more than one search would be

counter to the "premium" which the FOIA "places . . . on rapidly

processing FOIA requests." <u>Id.</u> (internal quotation marks and

citation omitted).  For all of these reasons, the court opined that

"[i]f the requester desires documents from dates other than those

specified in the request the requester simply has to file another

request." <u>Id.</u>

This court is fully aware that the issue in <u>Church of</u>

<u>Scientology</u> was what date restrictions an agency may place on a

FOIA request, as opposed to the issue here of whether an agency has

an obligation to provide ongoing daily copies.  Nonetheless, the

court finds that rationale applies with equal force in the present

case.

Plaintiff readily concedes the validity of OPM's position,

*i.e.*, there are "a number of cases ruling *against requiring*

agencies to automatically provide additional records as they become

available."  Reply (doc. 59) at 10:14-16 (emphasis added).  Perhaps

that is why plaintiff does not cite to a single case requiring an

agency to provide a requester with ongoing, daily copies of

documents prior to the time a FOIA request is made for such documents.  In any event, despite plaintiff's concession, he persists in arguing that the court should compel OPM to provide him with ongoing, daily feed of job vacancy announcements.  None of plaintiff's proffered reasons for providing daily feed are convincing however, especially given the complete paucity of applicable case law.

Plaintiff's first tack is to argue that he will sustain "[i]rreparable injury" if the court denies his "request for ongoing, daily files[.]"  Cross-Mot. (doc. 46) at 7:21.  Plaintiff claims that he has shown irreparable harm because "[n]o other methods," besides ongoing, daily files, "can produce complete and timely disclosure of the job vacancy information."  Id. at 7:21-22.  According to plaintiff, this is due to the relatively short amount of time federal job vacancies remain open.

Irreparable harm or injury is a necessary element of a preliminary injunction.  See, e.g., Independent Living Ctr., So. Cal. v. Maxwell-Jolly, 572 F.3d 644, 651 (9th Cir. 2009) (internal quotation marks and citation omitted) (Among other things, "[t]o warrant injunctive relief, a plaintiff must establish . . . , that he is likely to suffer irreparable harm in the absence of preliminary relief[.]")  As OPM is quick to point out, however, plaintiff Coven is not seeking a preliminary injunction.  Thus, he is invoking the wrong legal standard; the existence or non-existence of irreparable harm is not an issue here.

Second, plaintiff cites to Morrow v. F.B.I., 2 F.3d 642 (5th Cir. 1993); Aguilera v. F.B.I., 941 F.Supp. 144 (D.D.C. 1996); and Cleaver v. Kelly, 415 F.Supp. 174 (D.D.C. 1976), which he believes

- 16 -

establish his "entitle[ment] to ongoing, daily copies of the requested information." Cross-Mot. (doc. 46) at 7:15. These cases are wholly inapposite, however. In the first place, all three involved requests for expediting processing under FOIA – not requests for ongoing, daily copies of agency records absent a FOIA request. Nothing in any of these three cases even remotely supports plaintiff's position that OPM must provide ongoing, daily copies of its records. The court will not broaden the scope of those holdings to impose an obligation upon OPM which FOIA clearly does not contemplate.

Aguilera v. F.B.I., 941 F.Supp. 144 (D.D.C. 1996), the only case plaintiff cites where the court did grant a preliminary injunction also is readily distinguishable. Aguilera, a state court criminal defendant, was easily able to establish irreparable harm by showing that he was facing a 25 year to life prison sentence if convicted and, that if not expedited, his FOIA request would not be reached for approximately seven years, "after a significant portion of his sentence has been served." Id. at 151-152. Accordingly, the Aguilera court granted a preliminary injunction requiring the F.B.I. to expedite the handling of plaintiff's FOIA request. Plainly the circumstances of the present case, OPM's refusal to provide daily copy of job vacancy announcements, are a far cry from the irreparable harm which warranted a preliminary injunction in Aguilera.

Bolstering the finding that OPM is under no obligation to provide plaintiff with ongoing, daily copies of job vacancy announcements is the fact that plaintiff has "voluntarily declined to accept the daily data feed which is available outside the FOIA

process." Resp. (doc. 52) at 6:26-27.  As Willie A. Harrison,

OPM's Deputy Director of the USAJOBS® program, explains it:

> There are approximately four organizations and
> individuals currently receiving data feed of
> USAJOBS®[.]  Among the recipients of the data are
> Google, Inc., Microsoft Network and Yahoo (Via RSS
> Feeds)[.] Current recipients of the data have entered
> into a terms of use agreement with OPM, outlining the
> responsibilities of this data feed.

Decl'n of Willie A. Harrison (doc. 39-3) at 6, ¶ (15).

Significantly, Deputy Director Harrison further explains that:

> [w]hile this suit was pending, plaintiff was
> made aware of the availability of the data feed and
> sent a copy of the terms of use agreement, which he
> refused to sign because he felt that it unduly limited
> his use of the data.  OPM has since indicated its
> willingness to modify the terms of use agreement in an
> effort to accommodate plaintiff's concerns.  To date,
> plaintiff has not contacted the USAJOBS® office to
> discuss modification of the agreement.

Id.  Thus, because plaintiff's asserted need for daily feed arises

from his own claimed commercial need, and because he has

voluntarily refused to accept daily feed which is available outside

the FOIA process, the court finds no merit to plaintiff's argument

that FOIA entitles him to ongoing, daily copies as a matter of law.

Third, the court gives no credence to plaintiff's assertion

that "unusual circumstances," supposedly justify an order requiring

OPM to provide him with ongoing, daily copies of job vacancy

announcements.  Plaintiff cites to 5 U.S.C. §§ 3327 and 3330 as the

basis for his first claimed "unusual circumstance."  Basically, the

former statute requires OPM to "provide information concerning

opportunities to participate in competitive examinations . . . [to]

be made available to the employment offices of the United States

Employment Services."

5 U.S.C. § 3327(a) (West 2007).  Among other things, the latter

statute, section 3330, requires OPM to "establish and keep current a comprehensive list" of certain types of announcements of vacant competitive service positions.  5 U.S.C. § 3330 (West 2007). Nothing in either of those statutes can fairly be construed as mandating OPM to provide ongoing, daily copies of job vacancy announcements as part of its obligations in responding to a FOIA request.

Further, the "short time frame" for federal hiring activities is not an "unusual circumstance" requiring, in plaintiff's words, the "more extreme remedy" of ordering OPM to providing ongoing, daily copies.  See Reply (doc. 59) at 10:18 and 20.  Plaintiff claims that he, along with "his customers" will be "significant[ly] harm[ed]" if OPM is not required to provide him with ongoing, daily copies.  Id. at 10:24.  As previously discussed, however, there are other means outside the FOIA process available to plaintiff and his customers to obtain this information.  Thus, there is nothing about the "short time frame" of the requested information which convinces the court to depart from the settled rule that an agency has no obligation to provide documents generated after a given FOIA request.

Lastly, even if, as plaintiff maintains, his request would demand "almost no effort" by OPM, that is immaterial.  See id. at 11:1.  OPM's obligations under the FOIA are not dependent upon how easy or convenient it is for that agency to provide the requested information.  Moreover, as earlier noted, requiring OPM to provide information generated after a given FOIA request places an additional burden upon OPM which FOIA did not intend.

For the reasons set forth above, the court grants OPM's

summary judgment motion to the extent it is based upon plaintiff's

claimed entitlement to ongoing, daily copies of job vacancy

announcements.  Conversely, the court denies plaintiff's summary

judgment motion based upon that same claim.

### *C.  Expedited Processing*

Another way, according to plaintiff, in which OPM allegedly

violated FOIA is by not providing him with expedited processing

pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I).  That statute requires

agencies to promulgate regulations "providing for expedited

processing of requests for records– . . . in cases in which the

person requesting the records demonstrates a compelling need[.]" 5

U.S.C. § 552(a)(6)(E)(i)(I) (West 2007).  A "compelling need" in

turn means:

> (I) that a failure to obtain requested records
> on an expedited basis . . . could reasonably be
> expected to pose an imminent threat to the life or
> physical safety of an individual; *or*
>
> (II) with respect to a request made by a person
> primarily engaged in disseminating information,
> urgency to inform the public concerning actual
> or alleged Federal Government activity.

5 U.S.C. § (a)(6)(E)(v)(I) and (II) (West 2007). OPM argues that

plaintiff cannot demonstrate a "compelling need" within the meaning

of that statute.  In particular, OPM reasons that the information

which plaintiff is seeking in his expedited request is "widely

available on the USAJOBS website[,]" as well as being "available on

the daily feed" which OPM provides.  Mot. (doc. 40) at 3:13-14.

Therefore, OPM asserts that it also is entitled to summary judgment

as to plaintiff's claim that OPM did not expedite his FOIA request.

Plaintiff counters that he has shown the requisite "compelling

need" in that he "operates federalgovernmentjobs.us, a website that distributes job vacancies[,]" and that there is "[a]n urgency to inform the public" that "job vacancies exist[][.]"  Cross-Mot. (doc. 46) at 2, ¶¶ C(2) and (D).  In response to OPM's argument as to the availability of the requested information elsewhere, plaintiff asserts that FOIA does not include an "exemption from expedited processing because similar information is available on a government website."  Id. at 3, ¶ E(1).  There is no need for the court to become mired down in the issue of whether plaintiff Coven has shown compelling need so as to warrant expedited processing. The court need not engage in that inquiry because, as more fully explained below, it does not have jurisdiction to review OPM's denial of expedited processing here - a factor both parties fail to recognize.

     When discussing his claimed "entitle[ment] to [e]xpedited [p]rocessing[,]" plaintiff explicitly states that "5 USC 552(a)(4)(E)(**iii**)" is the jurisdictional basis for this claim. Cross-Mot. (doc. 46) at 2 (emphasis added).  There is no such statute, however.  Additionally, subsections (i) and (ii) of section 552(a)(4)(E) govern when a complainant may recover attorney's fees and costs.  Therefore, even if plaintiff intended to rely upon those particular subsections, they do not provide a jurisdictional basis for his expedited processing request.

     Moreover, FOIA unequivocally states that "[a] district court of the United States shall *not* have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv) (emphasis added).  As previously noted,

since the filing of this lawsuit, OPM has provided plaintiff with all of the information in his FOIA request, except for future records, which the court has found OPM has no statutory obligation to provide.  Thus, because OPM has "provided a complete response" to plaintiff Coven's request, id., "this Court no longer has subject matter jurisdiction over the claim that [OPM] failed to expedite processing of plaintiff's request."  See Judicial Watch, Inc. v. United States Naval Observatory, 160 F.Supp.2d 111, 112 (D.C.C. 2001); see also Citizens for Responsibility & Ethics in Washington v. Dep't of Justice, 535 F.Supp.2d 157, 160 (D.C.C. 2008) (reasoning, based upon 5 U.S.C. § 552(a)(6)(E)(iv), that because defendant had "completed processing" plaintiff's request, "claim for failure to grant expedited processing[]" was "moot"); and Al-Fayed v. C.I.A., 254 F.3d 300, 301 n.1 (D.C.Cir. 2001) (citing to § 552(a)(6)(E)(iv), the Court found that the agencies which had "completed processing plaintiffs' underlying document requests[]" were "no longer subject to appeal[]").  Thus, in conducting, as it must, a de novo review of OPM's denial of plaintiff's request for expedited processing, see Gerstein v. Central Intelligence Agency, 2006 WL 3462658, at *4 (N.D.Cal. 2006) (internal quotation marks and citation omitted), the court has little difficulty finding that it lacks jurisdiction to entertain plaintiff's claim that OPM improperly denied him expedited processing of his FOIA request.  Accordingly, the court grants OPM summary judgment in this regard as well; and necessarily, denies plaintiff's cross-motion for summary judgment on the expedited processing claim.

**D.  Fee Waiver/Reduction**

"Generally, the FOIA requires those who make document requests to pay for the search and duplication costs for the disclosed documents." Center for Medicare Advocacy, Inc. v. U.S. Dep't of Health and Human Services, 577 F.Supp.2d 221, 239 (D.D.C. 2008) (citing, *inter alia*, Kissinger, 445 U.S. at 153). There are certain situations though when costs may be reduced or waived completely. See id. (citations omitted). OPM construed plaintiff's FOIA request and his appeal "that there 'should be no fees' for providing copies of [OPM's] electronic records," and that he "wish[ed] to be notified if the fees exceed $1 per file[]" as a "request for [such] a waiver or reduction in fees[.]"[3] Doc. 39-2 at 1. OPM denied that request solely on the basis that plaintiff did "not qualify for a waiver or reduction in fees under OPM's FOIA regulations because [he] d[id] not fit into the category of an educational institution, non-commercial scientific institution, or representative of the news media." Id. (citing 5 CFR 294.103; 294.109).

"Where, as here, an agency denies a request for a fee waiver under FOIA, that determination is subject to a *de novo* standard of review. See 5 U.S.C. § 552(a)(4)(A)(vii) (West 2007); McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1284 (9th Cir. 1987). FOIA limits that review, however, "to the facts and arguments in the record before the agency." Center for Biological Diversity v. Office of Management & Budget, 546 F.Supp.2d 722, 728 (N.D.Cal. 2008) (citations omitted). "This limitation applies to both the reasons offered by the agency for the denial and to the

---

[3]     Hereinafter "waiver" shall be read as referring to fee waiver and fee reduction.

evidence in the record supporting the waiver." Id. (citing Friends of the Coast Fork v. United States Dept' of the Interior, 110 F.3d 53, 55 (9th Cir. 1997)).

Applying that standard of review here means that this court "may not consider reasons not offered by the agency [OPM] in the denial letter." Western Watersheds Project v. Brown, 318 F.Supp.2d 1036, 1039 (D.Idaho 2004) (citation omitted). In other words, *post-hoc* rationalizations are prohibited; OPM "must adhere to the reasons given at the administrative level[.]" Institute For Wildlife Protection v. U.S. Fish and Wildlife Serv., 290 F.Supp.2d 1226, 1228 (D.Or. 2003). "If those reasons are inadequate, and if the requesters meet their burden then a full fee waiver is in order." Friends of the Coast Fork, 110 F.3d at 55.

This *de novo* standard has different implications for plaintiff Coven. His "fee waiver request should be evaluated based on [its] face and the reasons given by [him] in support of the waiver[.]" Center for Medicare Advocacy, 577 F.Supp.2d at 241 (internal quotation marks and citations omitted). As a requester plaintiff Coven, "bear[s] the initial burden of satisfying the statutory and regulatory standards for a fee waiver[.]" Friends of the Coast Fork, 110 F.3d at 55 (citation omitted); see also Citizens For Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 602 F.Supp.2d 121, 125 (D.D.C. 2009) (citation omitted) ("Parties requesting a fee waiver under FOIA bear the burden of proving their entitlement to such a fee waiver."); Center for Medicare Advocacy, 577 F.Supp.2d at 239 (citing, *inter alia*, McClellan, 835 F.2d at 1284-85) ("burden of satisfying the 'public interest standard' is on" plaintiff); and 5 C.F.R. § 294.109(f)(3) ("In all cases the

- 24 -

1  burden of proof shall be on the requester to present evidence or

2  information in support of a request for a waiver or reduction of

3  fees.") With this standard of review firmly in mind, the court has

4  carefully examined the documents before it which evidently

5  constitute the administrative record here.[4]

6  ### 1. § 552(a)(4)(A)(iii) Waiver

7  FOIA sets forth a two prong test for determining whether an

8  agency is required to waive fees.  First, the disclosure must "be

9  likely to contribute significantly to public understanding of the

10  operations or activities of the government[.]" 5 U.S.C.

11  § 552(a)(4)(iii) (West 2007); see also McClellan, 835 F.2d at 1284.

12  Second, the disclosure must be "not primarily in the commercial

13  interest of the requester."  Id.; see also McClellan, 835 F.2d at

14  1284.  Pursuant to FOIA, an agency such as OPM "must promulgate

15  regulations establishing procedures and guidelines to determine

16  when such fees should be waived or reduced." Center for Biological

17  Diversity, 546 F.Supp.2d at 728 (citing 5 U.S.C. §

18  552(a)(4)(A)(1)).  OPM's fee waiver regulation mirrors the two-

19  party statutory test.  In accordance with that regulation, OPM

20  "will furnish documents without any charge, or at a reduced charge,

21  if disclosure of the information is in the public interest because

22  it is likely to contribute significantly to public understanding of

23  the operations or activities of the Government, and release of the

24  material is not primarily in the commercial interest of the

25  _____

26  [4]  Somewhat surprisingly, OPM did not specifically designate which parts
of the record now before this court were part of the administrative record.
Presumably, that administrative record at least encompassed the following: (1)
27  plaintiff's July 13, 2007 FOIA request (doc. 27 at 4; (2) OPM's September 10, 2007
response (doc. 27 at 5); (3) plaintiff's July 10, 2008 FOIA appeal (doc. 27) at 3;
28  and (4) OPM's September 4, 2008 response to that appeal (doc. 39-2) at 1-2.

requester." 5 C.F.R.

§ 294.109(f)(emphasis added). The court will separately consider whether plaintiff met his burden before OPM as to each of these elements.

### a. "Public Understanding"

As to the first prong of the public interest standard, OPM has promulgated a regulation setting out four criteria for "determining whether disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government[.]" See 5 C.F.R. § 294.109(f)(1). Those criteria are: (i) "[t]he subject of the request[;] (ii) [t]he information value of the information to be disclosed[;] (iii) [t]he contribution to an understanding of the subject by the general public likely to result from disclosure[;] [and] (iv) [t]he significance of the contribution to public understanding[.]" 5 C.F.R. § 294.109(f)(1)(i)-(iv).

"[A] requester seeking a fee waiver bears the initial burden of identifying the public interest to be served." McClellan, 835 F.2d at 1285 (internal quotation marks and citation omitted). A requester must offer more than "conclusory statements of public interest[.]" Id. at 1286. The request must "explain with reasonable specificity how disclosure will contribute to public understanding." Id. at 1285. When "public interest is asserted but not identified with reasonable specificity, and circumstances do not clarify the point of the requests[,] . . . an agency may infer a lack of substantial public interest[.]" Id. (internal quotation marks and citation omitted).

Confining itself to the facts and arguments before OPM, as it

must, readily persuades the court that plaintiff did not meet his burden as to public understanding. The subject matter is easily ascertainable from plaintiff's request - "electronic copies of the data contained in the USAJOBS.gov job vacancy database." Doc. 27 at 4. However, that request does not explain at all, much less with "reasonable specificity," how disclosure of that data will contribute to public understanding for purposes of FOIA's fee waiver provision. Plaintiff's FOIA request does mention that the requested "files will be used to disseminate the [job vacancy] information to the public." Id. At best, this is nothing more than a "conclusory statement" of public interest which is not sufficient to meet plaintiff's burden here.

Plainly, mere dissemination to the public, without more, does not show that such disclosure "is likely to contribute significantly to public understanding of the operations or activities of the government[.]" See 5 U.S.C. § 552(a)(4)(iii) (West 2007). Plaintiff's appeal is similarly deficient. Further, given the relative brevity of plaintiff Coven's FOIA request and his appeal, "circumstances do not clarify the point of [his] request[.]" See McClellan, 835 F.2d at 1285 (internal quotation marks and citation omitted). Given this lack of proof, the court finds that plaintiff Coven did not meet his burden as to the first prong of FOIA's public interest fee waiver provision - public understanding.

Three additional factors reinforce this finding. First, in his cross-motion plaintiff baldly asserts that disclosure of the requested data "will contribute significantly to the public understanding of the operations of government hiring[.]" Cross-Mot.

(doc. 46) at 7, ¶ (E) (3) (citation omitted).  Even disregarding the conclusory, unsubstantiated nature of that statement, plaintiff could not now rely thereon because a requester cannot, "at the district court level, cure [his] failure to demonstrate a public interest before the agency[.]"  See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ., 593 F.Supp.2d at 268 (citing Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 648 (D.C.Cir. 1987)).

Second, the present case stands in sharp contrast to those where courts have found the public understanding prong has been met.  Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 602 F.Supp.2d 121 (D.D.C. 2009), is illustrative. There, a non-profit organization requested information regarding a significant reduction in penalties sought by the Department of Justice ("DOJ") in tobacco industry litigation.  The court rejected DOJ's contention "that the claim was too 'ephemeral' to be likely to contribute to public understanding."  Id. at 125 (citation omitted).  In part, the court reasoned that "given the well-publicized nature of and interest in the reduction of fees in the tobacco litigation,
. . . , the contention that information on th[at] issue would inform the public understanding is not such a bare allegation as to warrant rejection by th[e] Court."  Id. at 125-126.  Therefore, in granting the organization's summary judgment motion on its entitlement to a fee waiver under FOIA, the court found, inter alia, that that request was in the public interest.  See also Institute for Wildlife Protection, 290 F.Supp.2d at 1231 (plaintiff entitled to a fee waiver under the public interest exception where

- 28 -

in its request and appeal it "stated that the information was of great public interest because the records concerned endangered species, [it] cited the public and Congressional interest in recent reports on [the agency']s use (or misuse) of science in endangered species actions, and gave an example of how GIS [Geographic Information Systems] information would be of interest to the public[]").

Third, as OPM notes, the requested job vacancy announcement information is available on OPM's own website, as well as on "other web sites using the daily data feed." Resp. (doc. 52) at 5. This fairly widespread availability further undermines the view that the requested information "is likely to contribute *significantly* to public understanding of the operations or activities of the government[.]" See 5 U.S.C. § 552(a)(4)(iii) (West 2007).

### b. "Commercial Interest"

Because plaintiff Coven has not met the first prong of the public interest exception, the court could end its inquiry here. However, for the moment, the court will assume that plaintiff did satisfy that first prong. Even with that assumption, the result does not change. As more fully explained below, plaintiff Coven also is unable to satisfy the second prong of that exception – that the requested data is not primarily in his commercial interest.

In his cross-motion, plaintiff enumerates several reasons as to why he should not be deemed a commercial requester. Plaintiff stresses that he "is primarily engaged in disseminating federal job vacancies free of charge." Cross-Mot. (doc. 46) at 5, ¶ (C)(2). Plaintiff states that the "[r]equested records are not intended for sale or as part of a commercial product or service." Id. at 5, ¶

(C)(4). Further attempting to distinguish himself from a
commercial use requester, plaintiff notes that the "[r]ecords will
be used to validate and verify federalgovernmentjobs.us current
existing systems[.]" _Id._ at 5, ¶ (C)(2)(b). Thus, from
plaintiff's standpoint, "there is little additional commercial
value[]" to be gained from his having access to these records. _See_
_id._ Based upon the foregoing, plaintiff maintains that
"[d]isclosure of the [requested] [i]nformation 'is Not Primarily in
the Commercial Interest of the Requester.'" _Id._ at 6, ¶(D)(6)
(emphasis in original). Yet, plaintiff likens his "business model
. . . to free online news media[,]" which "[a]cquir[e] and
publish[] information _using advertising to generate revenue._" _Id._
at 5, ¶ (C)(2)(a) (emphasis added). In any event, in plaintiff's
view he is not a commercial requester. Accordingly, he claims that
the OPM erred in finding that he was not entitled to a fee waiver.

OPM insists, however, that plaintiff will be using the
requested data "for 'commercial use' – to support his commercial,
for-profit jobs website." Resp. (doc. 52) at 5. Therefore, OPM
maintains that as a commercial requester, plaintiff cannot obtain a
fee waiver. Given the limited scope of this court's review, which
both parties overlook, there is no need to delve into plaintiff's
argument that he has been "misclassified . . . as [a] 'Commercial
use requestor [sic]' and is therefore entitled to reduced or waived
fees." Cross-Mot. (doc. 46) at 5, ¶ (C).

Confining itself to the administrative record, as the court
must, it finds that plaintiff did not meet his burden of showing
that he is not a commercial requester. In his July 13th FOIA
request, as noted above, plaintiff's stated purpose for requesting

electronic copies of the data contained in the USAJOBS® database

was "to disseminate th[at] information to the public." Doc. 27 at

4. Beyond that, plaintiff provided OPM with no other information

as to how he intended to use the requested information, or the

context in which he was making that request. Plaintiff's FOIA

appeal was similarly lacking in detail, stating simply that his

"purpose is to publish these job vacancies[.]" Id. at 3.

Unlike his cross-motion, plaintiff does not advise OPM that he

will be publishing that information free of charge, so as to

arguably take him outside the realm of a commercial requester.[5]

Thus, plaintiff did not meet his initial burden of establishing

that he does not have a commercial interest in the requested data.

Indeed, the scant information in plaintiff's July 13, 2007 FOIA

request and his subsequent appeal readily explains why OPM did not

assert plaintiff's status as a commercial requester as a reason for

denying his fee waiver request. Rather, as previously discussed,

OPM denied plaintiff's request because he did "not fit into the

category of an educational institution, non-commercial scientific

institution, or representative of the news media." Doc. 39-2 at 1

(citation omitted).

The present case is markedly different from Center for

Medicare Advocacy, 577 F.Supp.2d 221, where plaintiff noted in its

---

[5] Based upon plaintiff's description of his "business model" as "similar to free online news media,[a]cquiring and publishing information using advertising to generate revenue[,]" seemingly there may be a revenue generating component to his endeavor. See Cross-Mot. (doc. 46) at 5, ¶ (C)(2) a). While perhaps plaintiff is operating the federalgovernmentjobs.us website for purely altruistic reasons, it appears that ultimately plaintiff hopes to derive a profit therefrom. Moreover, even without charging a fee, the posting of federal job vacancies appears to be "information . . . relate[d] to commerce, trade, or profit[,]" and hence "commercial." See Carlson v. U.S. Postal Service, 504 F.3d 1123, 1128 (9th Cir. 2007) (internal quotation marks and citation omitted).

fee waiver request that it was "a well-known not-for-profit organization that educates and advocates on behalf of Medicare beneficiaries nationwide." Id. at 242. Based upon that statement in the administrative record, the court readily concluded that plaintiff "established that it does not have a commercial interest in the disclosure of the [requested] information." Id. As just explained, neither plaintiff Coven's initial fee waiver request nor his appeal included any similar statements as to his status.

As the foregoing shows, plaintiff Coven did not meet his threshold burden of establishing that the requested data was not primarily in his commercial interest. Therefore, plaintiff failed to meet his burden as to both prongs of FOIA's public interest fee waiver exception. Moreover, as outlined below, in its denial of plaintiff's appeal as to the fee waiver, OPM's proffered reason is adequate.

### 2. Adequacy of OPM's Reasons for Denying Fee Waiver

In arguing for summary judgment on the fee waiver issue, OPM notes that plaintiff has previously indicated that he "operates a business (federalgovernmentjobs.us[.]" Mot. (doc. 40) at 2:15 (internal quotation marks and citation omitted). OPM thus reasons that because plaintiff is "a commercial requester seeking job vacancy announcements which are widely available at the USAJOBS website," he does not qualify for a fee waiver or reduction. Id. at 2:15-18. In denying plaintiff's appeal of his fee waiver request, however, as set forth earlier, OPM's only proffered reason was that plaintiff did "not fit into the category of an educational institution, non-commercial scientific institution, or representative of the news media." Doc. 39-2 at 1 (citing 5 CFR

294.103; 294.109).  OPM must stand by that reason now and cannot expand its justification for denying plaintiff's fee waiver to include its belief that he is a commercial requester.  <u>See</u> <u>Western</u> <u>Watersheds</u>, 318 F.Supp.2d at 1039.

In his cross-motion, plaintiff does not mention whether he qualifies as an "educational institution" or a "non-commercial scientific institution," as OPM's regulations define those terms.[6] Perhaps that is because he realizes the futility of such an argument.  Regardless, the court deems plaintiff's silence as a concession that he does not qualify under either of those definitions, and hence is not entitled to a fee waiver or reduction on those grounds.

Plaintiff readily concedes that he is "not a representative of the news media[.]" Cross-Mot. (doc. 46) at 5, ¶ III (C)(2)b. Despite that concession, offering no rationale whatsoever, plaintiff asserts that he "meets all the requirement[s] of that classification under 5 CFR 294.103©."  <u>Id.</u>  Plaintiff reasons that "Federal jobs vacancies are of current interest to the public and [he] is a person who gathers that information for distribution to the public."  Reply (doc. 59) at 12:4-6.

The applicable regulation defines a "representative of the news media" as "any person actively gathering news for an entity that is organized and operated to publish, broadcast, or otherwise

_____

[6] Section 294.103(b)(1) defines an "educational institution" as "any public or private, preschool, elementary, or secondary school, institution of undergraduate or graduate higher education, or institution of professional or vocational education, which operates a program or programs of scholarly or scientific research."  5 C.F.R. § 294.103(b)(1).  "[N]on-commercial scientific institution refers to an institution that is not operated on a commercial basis . . . , and which is operated solely to conduct scientific or scholarly research, the results of which are not intended to promote any particular product or industry."  5 C.F.R. § 294.103(b)(2).

disseminate news to the public."  5 C.F.R.

§ 294.103©.  Arguably gathering federal job vacancy announcements,
such as plaintiff is attempting to do, could come within that
regulation's definition of "news" in that such information "would
be of current interest to the public."  See id.  Even giving
plaintiff that latitude, however, the court cannot find that he
qualifies as a "representative of the news media" because he has
not shown that he is gathering such information "for an entity that
is organized and operated to publish, broadcast, or otherwise
disseminate news to the public."  See  5 C.F.R. § 294.103©.

Plaintiff has not suggested, for example, that he is gathering
this information for "television or radio stations broadcasting to
the public at large," or for "publishers of periodicals who make
their products available for purchase or subscription by the
general public."  See id.   Thus, the court has little difficulty
finding that OPM accurately found that plaintiff is not entitled to
a fee waiver because he is not a "representative of the news
media."  OPM also accurately found, as set forth above, that
plaintiff did not qualify for a fee waiver because he does not fall
within the regulatory definition of either a non-commercial
scientific institution or an educational institution.

In sum, because plaintiff did not meet his threshold burden of
showing entitlement to a fee waiver under 5 U.S.C.
§ 552(a)(4)(A)(vii), and because OPM offered an adequate reason for
denying that request, the court grants summary judgment in OPM's
favor to the extent it is based upon OPM's denial of a fee waiver.
On the other hand, the court denies plaintiff's cross-motion for
summary judgment on that same issue.

### E. "Excessive" Fees

The only aspect of plaintiff's appeal which OPM granted was for "the job vacancy records contained in USAJOBS." Doc. 39-2 at 2. However, because OPM found that plaintiff was "not eligible for a fee waiver," it advised him that he would "be subject to applicable fees under 5 CFR 294.109." Id. Very basically, *inter alia*, that regulation sets forth rates used to compute fees for document searching, review and duplication. The rate, for example, for "[c]omputer time" is the "[a]ctual direct cost[]" to OPM. 5 C.F.R. § 294.109(b). "Actual direct costs[]" also is the regulatory rate for "[s]upplies and other materials[,]" but the rate for "[e]mployee time" is "[s]alary rate plus 16% to cover benefits." Id.

By letter dated October 17, 2008, OPM notified plaintiff that "[t]he labor and machine costs associated with []his request was, for "initial creation of report[,] . . . "[l]abor & [m]achine time 35 hours @ $250.00 per hour = $8750" and for "[s]ubsequent reports[,] . . . [l]abor 20 hours @ $250 = $5000.00[.]" Doc. 52-2 at 1 (emphasis omitted). There is no dispute that plaintiff appealed that fee assessment as "excessive[,]" but his December 16, 2008 appeal is not part of the record before this court. See Doc. 60-2 at 1.

There is no dispute as well that "[p]laintiff has not paid the estimate[d]" fees." Resp. (doc. 52) at 6. Therefore, OPM has "not yet released any records in response to plaintiff's request." Reply (doc. 59) at 6:14. In his cross-motion plaintiff takes the position that the assessed fees are "excessive" in that they are based on "exaggerated labor requirements and exaggerated hourly

rates." Cross-Mot. (doc. 46) at 4, ¶ III (B). Plaintiff outlines

the reasons which he believes support that position, such as

"[e]mployee time[] is to be charged at the hourly salary rate plus

16% to cover benefits, not $250 per hour." Id. at 4, ¶ III (B)(2)

(footnote added). The first part of this statement is accurate in

that, as noted above, it reflects the rate for "employee time"

found in

5 C.F.R. § 294.109(b). Plaintiff is overlooking the fact, however,

that the $250 hourly rate, as reported by OPM, reflects "labor *and*

machine costs[,]" not just "employee time." See Doc. 60-2 at 1

(emphasis added). Therefore, because OPM did not distinguish

between those types of costs, it does not necessarily follow, as

plaintiff implies, that the labor costs which OPM estimates are

excessive.

There is a much more fundamental defect in plaintiff's

argument though. His December 16, 2008 appeal of OPM's fee

estimate is not before the court. Therefore, it is impossible for

the court, as it must, to evaluate that appeal on its "face and the

reasons given by [plaintiff] in support" of his argument that the

estimated fee is excessive. See Center for Medicare Advocacy, 577

F.Supp.2d at 241 (internal quotation marks and citations omitted).

Not only that, but because that appeal is not part of this record,

the court has no way of knowing the precise relief which plaintiff

sought therein, *i.e.* fee waiver or fee reduction.

Plaintiff states in his reply that besides claiming that the

estimated fee was excessive, he claimed that it was "not in

compliance with . . . OPM's own regulation to charge actual direct

costs and not to charge more than 16% more than the salary of

employee's actual salary[.]" Reply (doc. 59) at 2:17-19.
Purportedly another ground for that appeal was that the assessed
fee was "not similar to the fees charged to other similar
requestors [sic]." Id. at 2:19-20.

The court has no reason to doubt that plaintiff made those
arguments to OPM, but the court cannot ignore the limited scope of
its review; and the fact remains that the appeal itself is not part
of this record. The court simply has no way of knowing, and it
declines to speculate, as "to the facts and arguments in the record
before" OPM. See Center for Biological Diversity, 546 F.Supp.2d at
728 (citations omitted). Simply put, without that appeal the court
is unable to determine whether plaintiff, as the requester, met his
initial "burden of . . . present[ing] evidence or information in
support or [his] request for [a] . . . reduction of fees[]" because
allegedly those fees are excessive. See 5 C.F.R. § 294.109(f)(3).

Additionally, plaintiff misconceives the nature of his burden
at this juncture. He maintains that he "has show[n] a significant
amount of evidence that the fee isn't reasonable." Reply (doc. 59)
at 13:22-23. He thus reasons that factual issues as to the
"excessive fee assessment" preclude summary judgment in OPM's favor
on that issue. See id. What plaintiff fails to recognize,
however, is that there is no way for the court to ascertain whether
that purported evidence was before OPM when it denied his appeal on
the fee assessment issue. Plaintiff has not shown, for example,
that any of the evidence which he is now proffering, such as select
pages from "MGS['] GSA 2008 Catalog[,]" was presented to OPM as
part of his December 16, 2008 appeal. See id. at 9:7, and exh. 4
thereto. Just like OPM cannot now expand the administrative

record to include reasons for denial upon which it did not previously rely, plaintiff cannot expand the scope of that record to include evidence, facts and arguments which he did not present to OPM in his December 16, 2008 appeal. Thus, as with the fee waiver issue, the court necessarily concludes that plaintiff has not met his burden of demonstrating the excessiveness of the fee estimate.

Moreover, OPM's reasons (which are part of this record) for disagreeing with plaintiff's argument that the fee estimate is excessive are adequate. In denying plaintiff's December 2008 appeal, OPM explained that the requested information "must be produced by . . . MGS, OPM's technology provider for USAJOBS information." Id. at 2. Further, OPM explained that "[t]he assessed fees . . . are based on an estimate from MGS for the expenditures that OPM will actually incur from MGS in creating the custom report necessary to provide [plaintiff] with the information [he] requested." Id. OPM thus reasoned that "the assessed fees represent the direct costs of providing services pursuant to 5 CFR 294.109 and are therefore appropriate." Id. OPM did offer plaintiff the option of "further confer[ring] with OPM staff to reformulate [his] request . . . to attempt to meet [his] needs at a lower cost[.]" Id. Evidently plaintiff did not avail himself of this opportunity, however, just as he has not contacted OPM regarding the possibility of a modified term of use agreement. Accordingly, the court grants OPM's motion for summary judgment as to the estimated fees and denies plaintiff's cross-motion in that regard.

F. "Electronic Format"

In his July 13, 2007, FOIA request, and in his appeal of that request, plaintiff expressly states that he is seeking "electronic copies of the data contained in the USAJOBS.gov job vacancy database." Doc. 27 at 3 and 4. Plaintiff concluded his FOIA request stating that he could "receive the files as is or compressed (.zip or .gz) by electronic mail, web, or through FTP[.]" Id. at 4. He further indicated that he could "provide an upload server, or c[ould] download form [MGS] or OPM provided server[.]" Id.

In his administrative appeal, citing to 5 U.S.C. § 552(a)(3)(B), plaintiff noted that the requested "records should be delivered in the format requested (specifically daily electronic data files delivered through FTP,[7] email, or web) and that OPM has the responsibility to maintain the records in that format." Id. Plaintiff concedes that "[o]ther formats such as the gateway file[] might be acceptable[,] if they contain all the data elements listed in [his] request for all vacancies posted to USAJOBS.gov." Id. Plaintiff added that in his view, "regardless of data feed generation issues, OPM would still have the responsibility to deliver electronic records contained in their database." Id.

In its response to that appeal, OPM recognized that plaintiff is "requesting electronic copies of the job vacancy records contained in USAJOBS[,]" and it granted plaintiff's appeal in that "regard[.]" Doc. 39-2 at 1 and 2. OPM's response does not indicate the manner of delivery however.

FOIA requires that a government agency such as OPM "provide

---

[7]    According to plaintiff, "FTP" is an acronym for "File Transmission Protocol[,] a commonly used method to transfer electronic file[s] through the Internet creating a 'copy' in the process." Cross-Mot. (doc. 46) at 10:25 n.1.

the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B) (West 2007). OPM indicates that it can "readily reproduce the information requested and provide it to Plaintiff in its *electronic format*[,]" which is what plaintiff sought in his FOIA request. <u>See</u> Resp. (doc. 52) at 7 (emphasis added). In light of the foregoing, and the court's previous ruling herein that plaintiff is not entitled to daily electronic data feeds, the court denies as moot the parties' respective motions for summary judgment on the issue of electronic format.

### *G. Attorney's Fees and Costs*

Plaintiff maintains that if he prevails on any aspect of this litigation, or, if the court finds that OPM "has had a change of position and [his] complaint is [not] insubstantial," he is entitled to attorney's fees and "other [l]itigation costs" pursuant to 5 U.S.C. § 552(a)(4)(E)(i). Cross-Mot. (doc. 46) at 10. That section provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i) (West Supp. 2009). Plaintiff Coven fails to take into account, however, that even if he can establish that he has "substantially prevail[ed]" within the meaning of that statute, as a *pro se* litigant, he cannot recover attorney's fees thereunder. <u>See</u> <u>Crews v. Internal Revenue</u>, 2000 WL 900800, at *6 (C.D.Cal. April 26, 2000) (citing <u>Carter v. Veterans Admin.</u>, 780 F.2d 1497, 1481 (9th Cir. 1986)) ("A pro se litigant may not recover attorney's fees under the FOIA.").

On the other hand, despite plaintiff's *pro se* status, in the court's discretion, he may be able to obtain an award of costs under that statute.  See id. (citation omitted).  The court agrees with OPM, though that an award of costs, if any, would be premature at this time in that no judgment has yet been entered in this case.  Plaintiff is advised, however, that if he does decide to pursue his costs, he will be held to the same standard of "substantially prevail[ing]."  See Laughlin v. I.R.S., 117 F.Supp.2d 997, 1002 (S.D.Cal. 2000) (citing 5 U.S.C. § 552(a)(4)(E)).

For the reasons set forth above, the court grants OPM's motion for summary judgment to the extent plaintiff is seeking to recovery statutory attorney's fees.  Conversely, the court denies plaintiff's summary judgment motion in that regard.  As to plaintiff's claim for costs, the court denies OPM's summary judgment motion on that claim.  It likewise denies plaintiff's motion insofar as he is seeking costs, but it denies his motion without prejudice to renew.

### *Conclusion*

For the reasons set forth above, the court hereby ORDERS that:

(1) the motion for summary judgment by defendant, the United States Office of Personnel Management (doc. 38) is GRANTED as to plaintiff's claims for: (a) "ongoing, daily copies" of USAJOBS® job vacancy announcements; (b) expedited processing; © denial of a fee waiver; and (d) attorney's fees; but DENIED as moot with respect to plaintiff's claim for the requested data in electronic format; and DENIED as to plaintiff's claim for costs;

IT IS FURTHER ORDERED that:

(2) the motion for summary judgment by plaintiff Daniel Saul

Coven (doc. 44) is DENIED as to his claims for: (a) "ongoing, daily" copies of USAJOBS® job vacancy announcements; (b) expedited processing; © denial of a fee waiver; (d) to have the requested data provided in electronic format; and

(e) attorney's fees; but plaintiff's claim for costs is DENIED without prejudice to renew; and

IT IS FINALLY ORDERED that:

(3) plaintiff *pro se* Daniel Saul Coven's Motion to Strike

. . .

(doc. 56) is DENIED.

DATED this 28th day of September, 2009.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record and plaintiff *pro se*